IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PAUL DEWAYNE JORDAN, )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>ANDREW M. SAUL, )<br>**Commissioner of the Social** )<br>**Security Administration,** )<br>)<br>**Defendant.** ) | Case No. CIV-19-301-RAW-SPS |

**REPORT AND RECOMMENDATION**

The claimant Paul Dewayne Jordan requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts from its

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was fifty-two years old at the time of the administrative hearing (Tr. 54). He completed the eighth grade, and has worked as a punch press operator, blower and compressor assembler, connection worker, and storage laborer (Tr. 42, 333). The claimant alleges inability to work since August 29, 2010, due to neck fusion, shoulder pain, foot problems, spine problems, pain in the lower back, and head injuries (Tr. 332).

## Procedural History

On November 3, 2016, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The application was denied. ALJ Lantz McClain conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated October 9, 2018 (Tr. 21-44). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b), *i. e.*, he could lift/carry twenty pounds occasionally and up to ten pounds frequently, stand and/or walk at least six hours in an eight-hour workday, and sit at least six hours in an eight-hour workday, and that he needed to avoid work above shoulder level. Additionally, he found the claimant could perform simple, repetitive tasks

and interact with co-workers and supervisors occasionally, but that he was unable to work with the public (Tr. 27). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, bakery worker and small product assembler (Tr. 42-43).

## Review

The claimant contends that the ALJ's opinion is not supported by substantial evidence because he failed to: (i) properly evaluate the treating physician opinions of Dr. Antoine Jabbour, Dr. Frank Tomecek, and Dr. Maria Ramos; and (ii) properly determine the work he could perform in accordance with step five. The undersigned Magistrate Judge agrees with the claimant's first contention, and the decision of the Commissioner should be reversed.

The ALJ found that the claimant had the severe impairments of degenerative disc disease, status post cervical surgery, status post right shoulder surgery, hypertension, diabetes mellitus, obesity, and adjustment disorder with depressed mood and social anxiety disorder (Tr. 23). The relevant medical evidence shows that prior to the alleged onset date of August 29, 2015, an x-ray of the cervical spine revealed mild spondylytic degenerative disc disease and degenerative changes of C5-C7 (Tr. 433). On August 25, 2010, the claimant suffered an on-the-job injury when a wall fell on top of his head (Tr. 436). A CT of the cervical spine conducted on the same day revealed multilevel degenerative changes with neural foraminal and central stenosis, along with foci of air adjacent to C5-C6 facet on the left within the epidural space and likely related to chronic degenerative change and possibly related to the recent trauma but of little clinical significance (Tr. 444). The

claimant was assessed with cervical spondylosis with neck, and postconcussion syndrome (Tr. 467). He went to physical therapy, which improved his range of motion but did not provide pain relief when walking (Tr. 533).

The claimant continued to complain of pain and an MRI of the brain was conducted on October 4, 2010, which revealed mild to moderate right mastoiditis and mild bilateral foraminal and left ethmoid sinusitis, likely chronic (Tr. 462). An MRI of the cervical spine conducted the same day revealed: (i) at C2/3, small left greater than right foraminal disc protrusions with mild to moderate left and mild right foraminal narrowing; (ii) at C3/4, mild disc bulging with fairly prominent foraminal disc protrusions/endplate spur complexes, as well as severe narrowing of the foramina, in addition to the C4 exiting nerves being likely compromised, which could cause radiculopathy; (iii) at C4/5 and C5/6, annular disc bulging and endplate spurring with larger foraminal disc protrusions, along with anterior surface cord contact with slight narrowing right of midline at C4/5 and mild narrowing of the central canal with severe narrowing of the foramina at these two levels and the exiting C5 and C6 nerves are likely comprised which could lead to radiculopathy; (iv) at C6/7, fairly prominent disc bulging and endplate spurring, as well as superimposed disc protrusion left of midline, moderate narrowing of the central canal and severe narrowing in both foramina, and the exiting C7 nerves were both likely compromised which could easily cause radiculopathy (Tr. 464).

On Jul 16, 2012, Dr. Mark Capehart examined the claimant and recommended surgery due to the claimant's cervical spinal stenosis (Tr. 513). A September 5, 2012 MRI of the lumbar spine revealed moderately severe degenerative spondylosis throughout the

entire cervical spine, with broad based mineralized disc herniation at C5-6 and C6-7 and each producing impingement and flattening of the cervical cord and central stenosis, as well as degenerative uncovertebral hypertrophy/spurring bilaterally at all mid cervical levels with bilateral foraminal stenosis at C3-4, C5-6, and C6-7 and spurring within the right lateral recess at C4-5 (Tr. 621). On September 13, 2012, the claimant underwent a multilevel anterior cervical discectormy and fusion performed by Dr. Eric Sherburn (Tr. 612-619). Various follow-up appointments indicate temporary lifting restrictions ranging from 25 to 50 pounds (Tr. 595-603). On June 6, 2013, Dr. Sherburn found the claimant had reach maximum medical improvement from a neck standpoint and released the claimant from his care. Noting that he was providing a neurosurgical standpoint, he did not assign permanent work restrictions (Tr. 593).

     The claimant underwent physical therapy for his right shoulder and cervical spine in May and June 2013 (Tr. 535-547). Treatment notes reflect the claimant largely tolerated the physical therapy, but he reported intermittent radiating pain, numbness, and tingling down his bilateral upper extremities (Tr. 541).

     On November 15, 2013, Dr. Ronald LaButti conducted an independent medical evaluation of the claimant, who noted that injections had not brought relief to the claimant's shoulder pain and that it appeared that a portion of the claimant's symptoms were unrelated to the shoulder and more likely related to the neck (Tr. 550). He noted the claimant's weakness and numbness in the upper extremity were more likely related to peripheral nerve compression like carpal tunnel syndrome or compression in the cervical spine, and not the shoulder (Tr. 550).

On December 2, 2013, the claimant underwent an MRI of the lumbar spine, which revealed concentric herniations at L1-2 and L2-3, more severe at the latter where central canal stenosis was noted, as well as some inferior foraminal herniation on the left at L4-5 (Tr. 576-577). Dr. Frank Tomecek, M.D., of the Oklahoma Spine & Brain Institute saw the claimant and recommended further testing (Tr. 585), so on January 24, 2014, the claimant underwent a lumbar discogram (Tr. 560-563) followed by a CT scan of the lumbar spine which revealed left intraforaminal herniations at L4-5 and L5-S1, central herniation at L2-3 along with central canal stenosis at the same level, and degenerative disc changes at L1-2 with concentric disc bulge producing only minimal deformity of the thecal sac (Tr. 568-569).

The following month, February 2014, Dr. Tomecek saw the claimant for follow up (Tr. 580-590). His report stated that the claimant had abnormal damaged disks at L1-2 and L2-3, as well as at L4-5 and L5-S1, but that he could not help the claimant with surgery (Tr. 580). He noted the claimant was in a lot of pain, however, and recommended chronic pain management and maintenance, and further noted the claimant's smoking habit and appeared to indicate he could or would not help a patient who smoked so much (Tr. 580). Dr. Tomecek found the claimant had reached maximal medical improvement as to his back, other than chronic pain, and stated that he did not believe the claimant was temporarily totally disabled. He believed the claimant could lift up to 25 pounds, but did not recommend driving a commercial vehicle or truck, or repetitive bending, crawling, kneeling, squatting, or climbing, and further indicated the claimant would need to alternate sitting and standing (Tr. 581). He stated that these would be permanent restrictions

(Tr. 581). Dr. Tomecek was aware of the claimant's shoulder problems, noting he was scheduled for surgery, but his opinion seemed focused solely on the claimant's back (Tr. 580-581).

The claimant also underwent an MRI of the right shoulder on February 28, 2011, which revealed, *inter alia*, mild to moderate joint osteoarthritis, mild to moderate diffuse tendinosis of the distal supraspinatous tendon with bursal surface fraying and a suspected small low to moderate grade partial thickness fissure-like undersurface tear of the posterior aspect of the tendon (Tr. 505). He underwent an additional MRI on December 14, 2012, which demonstrated interstitial signal abnormality within an intact rotator cuff, and the claimant was given a steroid injection in the right subacromial space on May 17, 2013 and July 29, 2013 (Tr. 521, 663). Dr. Sherburn noted this MRI and recommended the claimant be evaluated for a shoulder injury (Tr. 603). On March 7, 2014, Dr. Antoine Jabbour performed an arthroscopy of the right shoulder subacromial decompression for right shoulder impingement syndrome (Tr. 630-643). Dr. Jabbour referred the claimant for physical therapy for his shoulder, which the claimant completed although he continued to complain of strength deficits (Tr. 681-691). On May 29, 2014, Dr. Jabbour provided the claimant with a note of a permanent restriction of no repetitive overhead activities (Tr. 693).

On October 29, 2014, the claimant underwent a vocational evaluation at LDH Consultants, Inc. (Tr. 380). The report noted that the claimant had very few transferable skills and that he was in the eighth percentile when compared to individuals employed as skilled tradesmen (Tr. 385-386). The report concluded that the claimant was unemployable

due to chronic pain, physical limitations, permanent restrictions, lack of formal education beyond a high school equivalent degree, and lack of viable transferable skills (Tr. 387). Finally, the report opined that the claimant was permanently and totally disabled and not a candidate for vocational rehabilitation of any kind (Tr. 387).

On April 5, 2011, Dr. Richard Hastings, D.O., conducted an outpatient evaluation of the claimant in which he disagreed with Dr. Tomecek's reports and opined that the claimant was temporarily totally disabled and recommended a number of further treatment and consultative actions (Tr. 731-741). Of note, Dr. Hastings referred to Dr. Tomecek's opinion as a "half truth," noting that Dr. Tomecek's release was because there was nothing *he* could do rather than related to whether the claimant needed further treatment, stating, "The fact that the company doctor was not offering treatment for the patient's cervical spine work related disc herniation injuries, should not be interpreted as the fact that the patient does not need treatment of the cervical spine for this work related injury" (Tr. 736). On July 30, 2014, Dr. Hastings conducted an outpatient examination of the claimant, in which he concluded the claimant was 100% permanently and totally disabled and economically unemployable (Tr. 711-730). On April 6, 2015, Dr. Hastings conducted another outpatient evaluation of the claimant in which he found, *inter alia*, motor weakness upon examination of the right shoulder and left shoulder, as well as neurosensory loss over the right hand, and pain in the lumbar spine with weakness in his legs (Tr. 704-705). Dr. Hastings opined that the claimant was 100% totally permanently disabled and economically unemployable (Tr. 706-707).

The claimant also received treatment at Tahlequah Medical Group, with Dr. Maria Ramos as the attending physician, overseeing residents at the facility including Dr. John Bump, D.O. (Tr., *e. g.*, 771-772). Treatment notes beginning in 2015 reflect recurring diagnoses including back pain, hypertension, and anxiety (Tr., *e. g.*, 772, 774, 798, 803). The notes are not extensive related to the claimant's back pain, but indicate repeated prescriptions and refills related to pain management and anxiety (Tr., *e. g.*, 799-800, 804).

On December 30, 2015, resident Dr. John Bump, D.O., supervised by Dr. Ramos, completed a physical assessment of the claimant's impairments. Dr. Bump indicated that the claimant could lift/carry less than ten pounds occasionally and frequently, stand/walk less than two hours in an eight-hour workday while a medically-required hand-held assistive device was necessary for ambulation, and sit less than two hours in an eight-hour workday during which he must periodically alternate sitting and standing to alleviate pain (Tr. 896). Additionally, the doctors indicated the claimant had limited push/pull ability in both upper and lower extremities, that he could never perform the postural limitations, and could never reach, but that he could perform limited handling, fingering, feeling, and crouching (Tr. 897). Finally, they indicated the claimant should avoid concentrated or all exposure to environmental limitations (Tr. 898). On August 4, 2016, Dr. Ramos signed a letter stating that, based on her examinations, treatment, observation, and communication with the claimant, he was unable to sit for longer than thirty minutes at a time and no longer than one hour in an eight-hour workday, nor could he stand/walk longer than thirty minutes at a time or one hour in an eight-hour workday (Tr. 815). Additionally, she found he could lift/carry up to five pounds infrequently and never over that weight. She stated that his

condition restricted him from using his upper extremities for repetitive motion or movement including but not limited to grasping, gripping, pushing, or pulling (Tr. 815).

On February 17, 2017, Dr. Adel Malati conducted a physical examination of the claimant. Although part of the opinion appears to be missing (Tr. 859), Dr. Malati appears to opine that the claimant had full range of motion in the back, hips, knees, and ankles, and could do heel/toe walking without difficulty (Tr. 859). On February 28, 2017, Dr. Denise LaGrand conducted a mental status examination of the claimant, during which she concluded that the claimant had social anxiety disorder and adjustment disorder with depressed mood (Tr. 871). She noted moderate impairment, due to anxiety, in the area of maintaining effective social interaction on a consistent and independent basis with supervisors, co-workers, and the public, as well as moderate impairment, due to pain, in the ability to deal with normal pressures in a competitive work setting (Tr. 872).

The claimant established care at NeoHealth Hulbert Health Center in February 2018, largely for diabetes care, and he was noted to have a stiff gait, and pain with range of motion, although the cervical spine was stable and the claimant was deconditioned (Tr. 877). He was again noted to have osteoarthritic changes to his gait in May 2018 (Tr. 892).

State reviewing physicians determined that the claimant could perform light work with no additional limitations (Tr. 86-89, 138-141). Additionally, state reviewing physicians found the claimant was capable of simple and some complex work tasks for a sustained period of time, at an appropriate pace and with only limited contact with the general public (Tr. 91, 143).

In his written opinion at step four, the ALJ summarized at length the claimant's hearing testimony and the medical evidence in the record (Tr. 27-42). As to Dr. Ramos's August 2016 medical source statement, the ALJ found it to be exaggerated, citing "the evidence of record, including her own treatment notes" (Tr. 32). The ALJ summarized at length the consultative examinations by Dr. Malati and Dr. LaGrand (Tr. 33-35). The ALJ rejected the claimant's reports related to problems with his hands, including tingling, pain, and manipulation, ignoring the repeated times these symptoms appeared in the record over Dr. Malati's one-time examination (Tr. 37). Furthermore, the ALJ questioned the claimant's use of the cane, citing to Dr. Tomecek's statement that he had no surgical options to offer the claimant, as well as Dr. Malati's exam (Tr. 38). The ALJ acknowledged the surgeries the claimant had gone through, but finds they were "generally successful and no additional surgery has been performed or recommended" (Tr. 39). While the ALJ recited Dr. Tomecek's permanent physical restrictions (Tr. 30), he provided no analysis of this opinion, nor did he assign it any weight; however, it appears the ALJ rejected this opinion by failing to include these permanent restrictions in the claimant's RFC. The ALJ assigned partial weight to the opinions of the state physicians as to the claimant's physical impairments, finding the claimant to be further limited with respect to the limitation on overhead work (Tr. 40). He assigned little weight to the state reviewing physicians as to the claimant's mental impairments, further limiting the claimant to simple and repetitive tasks, with only occasional interaction with supervisors and co-workers, and no work with the general public (Tr. 40). The ALJ assigned little weight to Dr. Hastings's workers' compensation evaluations, noting that the standard differs from that of the Social Security

Administration (Tr. 41). He then assigned no weight to the medical source statement by Dr. Bump, supervised by Dr. Ramos, concluding these limitations were "grossly exaggerated based on objective findings, including 2018 musculoskeletal exams" (Tr. 41).

The claimant asserts that the ALJ erred in evaluating the opinion evidence in the record, and the undersigned Magistrate Judge agrees.[2] The medical opinions of treating physicians are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight. The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1300-1301, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, he is

---

[2] Here, the claimant's application for Title II benefits was filed November 3, 2016. The undersigned Magistrate Judge recognizes that for claims filed on or after March 27, 2017, medical opinions are evaluated under a different standard pursuant to 20 C.F.R. § 404.1520c, which is not applicable here.

required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations and citations omitted].  In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

Although the ALJ noted the proper analysis at the outset of step four, he failed to properly apply it for a number of reasons.  Although the ALJ's failure to simply assign a weight to Dr. Jabbour's opinion is not alone reversible, the undersigned Magistrate Judge finds reversible error in the ALJ's failure to assign a weight *or* perform a proper analysis in accordance with the *Watkins* factors for his rejection of the permanent limitations assigned by Dr. Tomecek.  Furthermore, the ALJ failed to apply these same factors to Dr. Ramos's opinion, particularly her longitudinal relationship with the claimant; indeed, ignoring Dr. Tomecek's permanent restrictions while focusing on Dr. Malati's one-time exam and on positive treating physician notes from appointments where the focus was on other impairments such as the claimant's diabetes is the exact kind of picking and choosing forbidden by the regulations.  Furthermore, the ALJ failed to account for the fact that the claimant continued to seek out and receive treatment for persistent back pain.  *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-386 (7th Cir. 1984).  And while the Commissioner is correct that the jobs identified by the ALJ at step five do not, according to the Dictionary of Occupational Title ("DICOT"), implicate the postural limitations identified by Dr. Tomecek, the DICOT is silent as to the identified

need for a sit/stand option and there is no evidence in the record that these jobs would support such a limitation.  *See* DICOT §§ 524.687-022, 706.684-022.

Finally, the undersigned Magistrate Judge notes that although an ALJ is not required to give controlling weight to an opinion that the claimant could not work, *see, e. g.,* 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."), he *is required* to determine the proper weight to give that opinion by applying the factors in 20 C.F.R. § 404.1527, specifically in relation to functional limitations.  *See Miller v. Barnhart,* 43 Fed. Appx. 200, 204 (10th Cir. 2002) (The ALJ "is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.") (*quoting* Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *3).  Here, the ALJ simply rejected the workers' compensation finding that the claimant was totally disabled without properly assessing these repeated and lengthy opinions by applying the appropriate factors.  *See Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004) ("Even if a treating physician's opinion is not entitled to controlling weight, [t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R. § 416.927]."), *quoting Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003).  On remand, the ALJ should properly address this evidence.

Because the ALJ failed to properly evaluate the evidence available in the record, the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis in accordance with the appropriate standards. If such analysis results in adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 23rd day of February, 2021.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**